IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

REX BROWN,                      )
                               )
            Plaintiff,         )           8:11CV284
                               )
      v.                       )
                               )
WEST CORPORATION, a Delaware   )      MEMORANDUM AND ORDER
corporation,                   )
                               )
            Defendant.         )
_____)


      This matter is before the Court on the motion of

plaintiff Rex Brown ("Brown") to compel discovery (Filing No.

34).  The March 26, 2012, protective order (Filing No. 20) has

satisfied defendant that its objections based on the proprietary

and confidential nature of some documents are no longer necessary

(Brief in Opposition, Filing No. 60, at 20 n.11).

      The parties have had a difficult time communicating

clearly on discovery matters.  Many of the issues complained of

in plaintiff's motion appear to have been fully and completely

resolved by defendant.  In addition, many of the alleged failures

are the product of insufficiently specific requests.  Defendant

frequently argues against discovery because of the burden of

production.  The Rules of Civil Procedure require only a showing

of relevance.  Though the Court has the obligation under Rule

26(b)(2)(C) to limit discovery where the burden outweighs the

likely benefit, many requests that defendant disputes, though they carry significant burdens, are highly relevant to disputed issues.  The purpose of discovery is to explore the materials relevant to the claims to determine whether evidence supporting the claims exists.  It is with that purpose in mind that the Court addresses the present motion.

## I. Interrogatory No. 18 and Request No. 13: Electronically Stored Information

Plaintiff asks that the Court compel defendant "to perform an independent search for communications regarding Rex Brown and/or other issues in this matter from all available sources and schedule a conference with the Magistrate to discuss the method of the search and/or monitoring of production of [electronically stored information]" (Motion to Compel, Filing No. 34, at 7).  The communications plaintiff seeks are e-mails. The Court reads "other issues" as plaintiff's additional proposed search terms (aside from "Rex Brown").  The Court reads "all available sources" as all sources, electronic and otherwise, from every West employee with even the remotest connection to Rex Brown's employment at West.  Finally, the Court notes the plaintiff's request for an "independent search" -- a reference to the defendant's search procedure which allows the user of the e-

mail account to "self search," as opposed to a search conducted by an information technology specialist.

### A. Privilege Log[1]

The mandate of Rule 26(b)(5) clearly requires a privilege log "whenever a party withholds information otherwise discoverable by claiming that the information is privileged." Such privilege logs "can aid the court in its resolution of a dispute, but '[t]he tribunal ultimately decides what information must be disclosed on a privileged document log.'" *Prism Technologies, LLC v. Adobe Sys., Inc.*, 8:10CV220, 2011 WL 5523389, *2 (D. Neb. Nov. 14, 2011) (quoting *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 992 (8th Cir. 1999)). This Court has joined other district courts in assuming privilege for attorney-client communications that transpire after the initiation of litigation in situations where the plaintiff is requesting extensive discovery. *Id.* The Court sees no reason to depart from that assumption in this case.

This does not relieve defendant of its remaining burden. While the Court recognizes that some communications between the parties may have left vague the necessity of creating

---

[1] Plaintiff has broached this issue both generally and with specific regard to Request No. 5. The Court addresses all the issues here.

a privilege log (Brief in Opposition, Filing No. 60, at 34), the instant motion makes clear that the plaintiff has not agreed to forgo the strictures of Rule 26(b)(5) for requests aimed at the pre-litigation period or materials in the post-litigation period that were not prepared in anticipation of litigation.  The Court will instruct the defendant to produce such logs now.[2]

### B. Independent Search

None of the cases which plaintiff cited hold, as plaintiff claims, that "self-searching is wholly unreliable" (Brief in Support, Filing No. 35, at 18).  At best, the cases caution that effective custodian-conducted searches must give specific directions as to search terms and techniques and that the reliability of a self-search cannot be determined without examination of the parameters of the search.  *See, e.g.*, *Nat'l Day Laborer Org. v. United States Immigration and Customs Enforcement Agency*, No. 10 Civ. 3488 (SAS), 2012 WL 2878130 (S.D.N.Y. July 13, 2012).  Nor do the cases suggest a baseline requirement for an independent search.

Still, defendant has refused to produce the litigation hold memo, which appears to be the document that triggered searches by West employees.  While such letters are themselves

---

[2] The privilege log provided to the Court by the defendant has entries for only two documents (Filing No. 62, Ex. A-8).

-4-

privileged, the information surrounding the letters is not.  *See Magnetar Tech. Corp. V. Six Flags Theme Park Inc.*, CA 07-127-LPS-MPT, 2012 WL 3609715, n.114 (D. Del. Aug. 22, 2012) (compiling cases).  The people to whom the letter was sent, the directions for preservation, the sources identified for search, the terms used for the search, the defendant's continued efforts to ensure compliance, and any other information relevant to the scope and depth of the preservation or the search must be disclosed in detail so that precise objections can be made and so that defendant's search can be effectively reviewed by this Court.  The affidavits by West employees describing their searches are not sufficiently detailed to determine whether defendant has reasonably complied with plaintiff's request for production -- in fact, the variety and general language in the affidavits suggests precisely the kind of unguided, unreliable search warned of in *National Day*.  Only production of the search parameters given to those employees can help overcome this suggestion.

        To the extent that the parameters of the litigation hold show negligence, bad-faith, or are simply too narrow, the plaintiff can make further motions if the parties cannot agree to expanded terms or sources.  To the extent that these parameters delineate the "who" (which employees) and "what" (which files

sources), they might also resolve the issue of whether all "available sources" have been searched.

### C. Scope of Discovery

Defendant has objected to many of plaintiffs requests as being some combination of "overbroad, burdensome, harassing" and insufficiently specific.  Under the Federal Rules of Civil Procedure, the plaintiff is entitled to "nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The rules place an additional limit on discovery of Electronically Stored Information only to the extent that the sources are not "reasonably accessible."  *Id.* at 26(b)(2)(B).  More generally, the Court must limit the extent of discovery under Rule 26(b)(2)(C) where the burden or expense of production outweighs the likely benefit.  *Id.*  at 26(b)(2)(C)(iii).

The e-mails from John Thielen's computer found using the plaintiff's name as the search term are clearly relevant to Thielen's assessment of and attitude toward the plaintiff and, by proxy, Thielen's ultimate motives for any disparate treatment. It is difficult to imagine how any of the limits on discovery in the Federal Rules might apply considering the defendant has already run the search and identified the e-mails.  Defendant has failed to make a showing of undue burden or cost.  The defendant must either review the e-mails for privileged information and add

-6-

any documents withheld to the privilege log or agree to plaintiff's proposed clawback provision.

## II. Interrogatory No. 2: Witness Statements

This interrogatory has clearly been addressed by defendant's supplemental answer in which it states that it does not have any such witness statements.  Plaintiff has failed to identify any specific statements by persons that he thinks are responsive but have not been disclosed.

## III. Interrogatory Nos. 14, 15, and 16 and Request for Production of Documents Nos. 9, 15, 16 and 37:  Complaints by Other Employees

Other complaints that indicate a pattern of racial discrimination would be circumstantial evidence of individual discriminatory intent.  *See Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988) (finding comparative data probative of "whether discrimination has motivated a particular employee's treatment"), *overruled in part on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, (1989).  Because the plaintiff is claiming disparate treatment ranging from hostile work environment to constructive discharge, the individuals who are relevant to such inquires include all those who allegedly contributed to the hostile atmosphere or took part in allegedly discriminatory decisions.  Likewise, information concerning how these individuals personally handled complaints of discrimination

-7-

is relevant to their attitude toward plaintiff and the intention of their actions toward him.

However, the marginal relevance of such complaints diminishes the further the complaining employee was from the decision makers that allegedly discriminated against the plaintiff. *See generally*, *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) (approving of "limit[ing] the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery"); *Carmen v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) ("Companywide statistics are usually not helpful in establishing pretext in an employment discrimination case, because those who make employment decisions vary across divisions.").

The Court recognizes a factual dispute involving defendant's affirmative defense of failure to report (*compare* Complaint, Filing No. 1, at 17 ¶ 5, *with* Answer, Filing No 9, at 19 ¶ 5). The plaintiff may be entitled to broader discovery regarding the defendant's record and actual practices regarding complaints of discrimination. However, this is a potentially enormous expansion of the scope of discovery for which there is nothing to suggest that a broader practice of discrimination -- occurring in defiance of the written policy -- will be uncovered.

-8-

At this time, plaintiff has failed to show any "particularized need and relevance" to move beyond the "source of the complained of discrimination." *E.E.O.C. v. Woodman of the World Life Ins. Society*, 8:03CV165, 2007 WL 1217919, *3 (D. Neb. Mar. 15, 2007).

If it has not already done so, defendant shall respond to Interrogatory Nos. 14, 15, 16 and produce all responsive documents to Request Nos. 15, 16, and 37 that relate to complaints against (1) individuals involved in the decision to fire plaintiff or with discretionary authority to grant or refuse plaintiff's alleged requests for support (2) individuals accused of discrimination, harassment, or retaliation in this case. Request No. 9 seeks documents regarding the investigation "into plaintiff's complaints."  Again, defendant appears to have satisfactorily addressed this issue by making facially valid privilege objections and pointing out that no other evidence of internal complaints exist.  It is unclear whether defendant has provided an appropriate privilege log for all the information and documents withheld.

## IV. Interrogatory No. 20: Continuing Education Materials, Request No. 14: Documents Reviewed in Responding to Interrogatories

A motion to compel on these matters appears to be unnecessary or premature.  Defendant has not refused to accommodate these requests.  In fact, it appears that defendant

-9-

has largely complied and continues to address plaintiff's lingering concerns. Absent a specific request from plaintiff regarding documents he thinks are being withheld, no affirmative order to compel is appropriate at this time. Any documents withheld on the basis of privilege should be noted on the privilege log.

## V. Interrogatory No. 23: Persons Involved in Performance Improvement Plan Decision

Defendant is correct that the "various business leaders" consulted by Thielen might not have played a large role in the decision making process. Still, the fact that they were consulted before the decision was reached suggests that they might have relevant information and, therefore, provides a basis for the minimal discovery requested here: disclosure of their names and the extent of their involvement.

## VI. Interrogatory No. 27 and Request No. 17: Statistical Evidence

Plaintiff cites *Dias v. AT&T*, 752 F.2d 1356 (9th Cir. 1985), in which the Ninth Circuit found discovery of statistical data appropriate where plaintiff required the data to prove the inference of discrimination. The plaintiff in *Dias* was claiming disparate treatment in the form of failure to promote because of race which implicated the broader policies and practices of his former employer. Brown's allegations of harassment, constructive

-10-

discharge, and unequal managerial support are all tied to the actions of a few key players in his department or related to his work.  At this time, plaintiff has not shown that information relevant to the individualized treatment of which he complains is likely to be uncovered through this discovery request.

Further, statistical comparisons will inevitably require comparisons of West's racial makeup against the makeup of the qualified applicant pool or some similar statistic.  *See generally*, *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977); *Thomas v. Caldera*, 221 F.3d 1344, *1 (8th Cir. 2000); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 778 (8th Cir. 1995) ("[S]tatistics, to be meaningful indicators of pretext, evaluate the treatment of comparable employees. . . . [Company-wide] statistics 'have relatively little relevance to determining . . . discriminatory animus' of the specific manager who made the ultimate decision to terminate" (quoting *MacDissi v. Valmont Ind., Inc.*, 856 F.2d 1054 (8th Cir. 1988))).  Given the individualized allegations of discrimination, it is unlikely that any useful comparisons can be made using the broader set of West employees as a statistical starting point.  Therefore, the plaintiff's request must be limited to the makeup of those who have been subject to the hiring, firing, or direct managerial

control of those individuals the plaintiff is accusing of discriminatory treatment.

## VII. Interrogatory No. 28: Justifications for Performance Improvement Notice

Understandably, plaintiff seeks West's purported non-discriminatory motivations for the adverse employment decision. Defendant has provided copious documentation supporting its decision, but plaintiff appears to object that defendant has provided too much.  Defendant's answer, along with plaintiff's deposition of the decision-makers, will provide plaintiff with adequate opportunity for discovery on this topic.

## VIII. Request No. 6: Employee Surveys and Interviews Regarding Concerns About Discrimination

The defendant reasonably read the interrogatory to cover surveys, interviews, or other documents reflecting employees views on race, exclusive of complaints covered by Interrogatory No. 15.  Plaintiff has not established the relevance of discrimination complaints on grounds other than race.  It appears that defendant has otherwise complied with this request.

## IX. Request No. 7: Documents that Provide Basis for Placing Plaintiff on a Performance Improvement Plan

Request No. 7 asks defendant to identify the documents "relied upon" in making the adverse employment decisions.

Defendant has offered to supplement its response by
"identify[ing] by Bates-Range the documents that West believes
supports its reasons for taking adverse action against
plaintiff."  However, this would, presumably, be a much broader
set of materials, including all documents that support the
decision in hind-sight even if they were not actually relied upon
by the decision-makers.  Defendant should not only identify the
documents actually relied upon, but also, as requested, identify
which decision-makers relied on those documents.

## X. Request No. 11: Minutes of Meetings Concerning Plaintiff

This issue appears to have been adequately addressed by
the assurance in defendant's brief that "West has produced all
documents regarding such meetings or discussions that it has been
able to locate to date. . . . No documents other than documents
created after this litigation was filed, are being withheld."  As
above, the defendant should produce a privilege log for non-
communications that are being withheld on the basis of privilege.

## XI. Request No. 21: Wage/Salary/Commission Information

Plaintiff is satisfied with the production on this
request except with regard to "commission audit reports."
Plaintiff's brief does not establish what these materials are or
how they are relevant.  Therefore, an affirmative motion to
compel is inappropriate at this time.

-13-

## XII. Request No. 24: Comparator Information

Comparator information is relevant to plaintiff's claims of disparate treatment in the terms and conditions of his employment.  Comparators may have different job titles if they had substantially similar responsibilities.  Of particular relevance are comparators whose files or other sources indicate the same conduct as plaintiff, regardless of whether or how they were disciplined.  Again, the limited nature of the pleadings does not occasion discovery beyond the allegedly discriminating decision-makers.

## XIII. Request No. 26:  Sales/Commission/Lead Information

The Court agrees that the term "relating to the business sold" is either vague and ambiguous -- failing the specificity requirement of Rule 34(b) -- or includes in its breadth non-relevant materials.  Yet, the defendant has continued to supply additional materials as plaintiff has made more specific requests.  A comprehensive motion to compel on this request appears to be premature.

However, defendant has refused to produce certain materials with the explanation that the data collection software does not create reports of the kind requested.  If it has not already done so, defendant should produce the most robust "Salesforce.com" reports relevant to sales, leads, and

-14-

commissions regarding plaintiff and comparators that are capable of being created.  Also, to the extent possible, defendant shall supplement its production by distinguishing old business from new business because it is relevant to any comparisons based on the Performance Improvement Notification.  Plaintiff's request for underlying documents are duplicative absent a specific showing that they are in some way irreparably incomplete or unreliable.

**XIV. Request No. 32 and 33: Business Expenses and Travel Expenses**

Plaintiff's complaint of discriminatory treatment regarding business expenses hinges on two points.  First, a single incident regarding a parking fee that was questioned and ultimately was not paid for by West -- the only reimbursement request of plaintiff's that was ever denied.  This alone does not constitute a showing that relevant information will be discovered.  Under the starkest contrast possible, this was the one and only reimbursement request that West had ever denied. Given the facially reasonable rationale (that a higher-cost express lot was used), this would not suggest discriminatory behavior.

Second, plaintiff suggests that his requests were subject to higher scrutiny based on longer turn around time.  The source of this disparate treatment is in the scrutiny employed by John Thielen and Mike Sturgeon, but plaintiff has not established

that the requested records would reflect the level of scrutiny imposed.  The only factor that could be measured is the time it took to process plaintiff's requests, but plaintiff has not asked for this data or suggested that it would be contained in the reports.  In fact, the only evidence presented to the Court -- the deposition testimony of Christine Rodriguez -- gives no indication of any unusual delay for plaintiff's reimbursement requests.  Thus, this aspect of plaintiff's request for production is not likely to uncover relevant information.

One type of information would be relevant as a helpful basis for comparison:  any similar requests that were granted or denied.  Thus, defendant shall produce any requests for the kind of "express lot" parking reimbursements from comparators that were accepted or denied between January of 2004 and the present.

## XV. Request No. 35: Pricing Given to Comparable Clients

Plaintiff is claiming discrimination in the pricing offered to his prospects and clients.  Documents that provide a basis for comparing pricing structures for plaintiff's prospects and the prospects of other Directors of Sales are relevant to whether such a difference exists.  The defendant's argument that differences in profit margins could explain these differences go to the weight of the evidence.

## XVI. Request No. 40: Rex Brown E-Mail Activity

-16-

The Court assumes the absence of Request No. 40 in plaintiff's prayer for relief was an oversight, but the Court notes that it has been fully briefed by both parties.  This is another case in which the defendant appears to have produced all available materials.  Absent a specific reference to available materials that have been withheld, no affirmative order is appropriate at this time.

**XVII. Request No. 41: Minimum FTE/Revenue Policies**

The parties agree that any written global policies, even if they are specific to the business units, are discoverable.  Defendant claims to have complied with this request.  This addresses most of the relevant materials that plaintiff requested.  To the extent plaintiff seeks "all e-mails . . . that discuss West's [minimum standards]," the Court finds that the burden of identifying all such e-mails outweighs the expected benefit because the lack of any written global policies held by the business units makes e-mail discussions of such policies highly unlikely and of dubious value.

**XVIII. 30(b)(6) Deposition**

A. Designation of 30(B)(6) Witnesses

A "spirit of cooperation, openness, and candor [is] owed to fellow litigants and the court and [is] called for in modern discovery."  *Sentis Group, Inc., Coral Group, Inc. v.*

-17-

*Shell Oil Co.*, 559 F.3d 888, 891 (8th Cir. 2009). Accordingly, initial objections lodged by the opposing party serve as a means of communication between the parties over the appropriate scope of a deposition. Plaintiff's insistence that the only appropriate action for defendant was a motion to quash is not supported anywhere in the case it cites for that proposition. Rather, the background of that case demonstrates a process of objections and concessions by the parties before seeking guidance from the Court. *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 499-500 (D.S.D. 2009). In the present case, the process was initiated by the defendant's objections only six days before the deposition was scheduled to occur and received only isolated responses from plaintiff before both parties proceeded with the deposition despite their differences. Plaintiff now seeks an order compelling discovery on the disputed areas despite his failure to address these objections before proceeding with the deposition.

Similarly, plaintiff cites *Dravo v. Liberty Mutual Insurance Company*, 164 F.R.D. 70, for the proposition that "[t]he only proper objection to questioning at any deposition is if the information sought is privileged" (Brief in Support, Filing No. 35, at 55). In fact, that case stands for the broader, well-accepted proposition that the only basis for instructing a witness not to answer is to protect privileged information. *Id.*

-18-

at 73-74.  A sampling of the record indicates that, despite the objection, the witnesses were allowed to answer all but one of plaintiff's questions.

Broadly speaking, plaintiff's requests were not sufficiently specific in identifying the topics he wished to cover.  For example, he asserts that "[t]here was no IT representative designated regarding the litigation hold to discuss e-mail searches."  However, the closest category under the "Electronic Records" heading is "Company Email Systems and Instant Messaging."  It should have been no surprise, therefore, that when asked about litigation holds, the IT witness was not prepared to answer.

## 1. E-Mail Activity on Mike Sturgeon's E-Mail Account Regarding His Departure

The Court notes that defendant's counsel's offer to stipulate does not substitute for testimony of a corporate representative on that fact.  A stipulation is an agreement between the parties on a certain fact.  Plaintiff's refusal to agree to a version of the facts that is beneficial to the defendant is not a basis for refusing to provide a designee who can speak knowledgeably for the corporation on that issue.  However, plaintiff has requested a motion to compel without any articulation as to how the information requested is relevant.

-19-

**2. Minutes or Records of Meetings Held by West Personnel Following Receipt of the Litigation Hold or Regarding Plaintiff**

As noted above, while litigation hold memos are themselves privileged, the information surrounding a memo is not. *See Magnetar,* 2012 WL 3609715, n.114.  Still, Rule 26(b)(3)(A) provides protection for "documents and tangible things that are prepared in anticipation of litigation or for trial by . . . another party."  The Eighth Circuit has held this standard met where documents were "prepared or obtained because of the prospect of litigation" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987).  It can hardly be said that meetings discussing the litigation hold were not held in reasonable anticipation of litigation; nor can it be said that minutes of those meetings were not created "because of" the litigation.

**3. Other Complaints of Discrimination**

The scope of this request has been fully addressed in section III.

**4. Any Meetings that Occurred Post-Litigation Regarding West's Employees Wherein Litigation Was Discussed**

Though such meetings are closely connected with privileged documents and information, the fact of the meetings themselves and some circumstances or content of the meetings may be discoverable.  *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("[W]ork product does not preclude inquiry

-20-

into the mere fact of an investigation."). However, the Court agrees that this request is overbroad. Plaintiff failed to specify the kind of information requested so that defendant could adequately prepare an appropriate corporate representative.

**5. The Amount Paid and Itemization of Other Client-Related Expenses for each DOS from 2004-2010 and Travel Requests for Other DOS**

The scope of these requests have been fully addressed in sections XI-XIV.

**6. Employment of Robert Henderson**

Plaintiff's requests are only relevant to the intent of the West decision-makers if the same individuals were responsible for the hiring of Robert Henderson and the adverse employment decisions or harassment against the plaintiff. If plaintiff chooses to further pursue this issue, defendant must identify the decision-makers in the hiring of Robert Henderson. For any overlapping decision-makers, defendant must answer additional questions regarding what those individuals knew at the time of hiring Henderson.

**7. Affirmative Action Plan**

Plaintiff claims that *Craik v. Minnesota State University Board*, 731 F.2d 465 (8th Cir. 1984) "clearly holds that information regarding an employer's Affirmative Action Plan is discoverable." In fact, *Craik* does not address any discovery

-21-

issues.  Rather, in reviewing the magistrate judge's balancing of the evidence, the Eighth Circuit held that in a class action case where pattern and practice allegations regarding promotions are supported by evidence that a defendant organization did not abide by its affirmative action plan, such evidence should be considered as "relevant to the question of discriminatory intent." *Id.* At 471-72.

This is not a class action, nor is it a promotion case, nor does plaintiff allege an overarching discriminatory policy, pattern, or practice in defendant's organization.  Rather, plaintiff makes claims of disparate treatment by specific individuals within the organization.  Thus, the only relevant information is the content of West's affirmative action policy and whether the individuals accused of discrimination followed it.

B. Failing to Properly Prepare Witnesses and Produce Documents

Plaintiff points to a number of deposition questions that defendant's witnesses were unable to answer, many of which involved the identification and interpretation of documents. Plaintiff has failed to establish that the information requested is relevant.  Given the breadth of the categories in plaintiff's request, deficient answers on the part of defendant's witnesses are understandable and, perhaps, unsurprising.  It would appear

-22-

that defendant made a good-faith attempt to provide witnesses with knowledge of relevant information within plaintiff's categories.  Efforts at interpretation by defendant in identifying the relevant information under plaintiff's categories is understandable given plaintiff's failure to more specifically identify the relevant information he was seeking.  Plaintiff has also failed to establish that he has conferred with opposing counsel regarding these deficiencies in an attempt to obtain the additional information without a court order.  Finally, plaintiff failed to specifically link the unanswered questions to specific categories in his 30(b)(6) notice, making it impossible for the Court to determine whether the failure to answer was due to an unreasonably narrow reading of the requested topics.

Plaintiff's request for documents face similar short-comings.  In addition, plaintiff requested documents that had already been produced.

## VI. Costs and Fees

As discussed throughout, most of the conflicts requiring this motion to compel are maintained in good faith. Others can be ascribed to the parties equally.  Many of the requests appear to have been satisfactorily addressed or prematurely accuse the defendant of failing or refusing to produce materials.  Though it is not clear that all of the

-23-

specific mandates made in this order are strictly necessary in view of the production that has already been made, the Court has included them to ensure a resolution moving forward.  Under these circumstances, the Court will not assess costs and fees.

## VII. Privilege

The Court has not been presented with enough information to make any rulings on the appropriateness of most of defendant's privilege objections.  This is in part because, as discussed above, defendant's privilege log is incomplete.  Except as regarding Interrogatory No. 18 and Request No. 13, this order does not address the appropriateness of privilege objections and defendant may continue to make such objections while making the proper entries in a privilege log.

IT IS ORDERED:

1) Defendant shall produce a privilege log covering all materials that it refuses to produce on the grounds of attorney client privilege or work product privilege if defendant would otherwise be required to produce such materials.  The log may exclude attorney-client communications following the initiation of this litigation.

2) Defendant shall disclose to plaintiff information stemming from the litigation hold as follows by November 21, 2012:

-24-

a) The names of individuals to whom the litigation hold was sent and the dates on which the hold was communicated to those individuals;

b) The specific sources that custodians were instructed to search (hard drives, e-mail inbox, e-mail archives, back-up files, network drives, personal computers, cell phones, etc.);

c) What specific search terms, if any, custodians were instructed to use in their search;

d) Any other directions custodians were given to limit or aid in their search;

e) When and for what specific sources preservation policies were put in place;

f) When and what steps were taken to preserve ESI;

g) What steps where taken to ensure compliance with preservation policies and to ensure the accuracy of searches after the litigation hold was distributed;

h) Identification of all documents related to preservation or search efforts, either in a privilege log or otherwise;

i) The capabilities and limitations of running a global search for e-mail and other electronically stored documents.

3) Defendant shall produce the non-privileged documents and communications from John Thielen's e-mail that were identified using the plaintiff's name as a search term.

4) Plaintiff's motion to compel additional responses to the following requests are denied:

> a) Interrogatory Nos. 2, 20, 28
>
> b) Request Nos. 6, 9, 11, 14, 21, 40, 41

5) Plaintiff's motion to compel additional responses is granted as follows:

> a) Defendant shall respond to Interrogatory Nos. 14, 15, 16 and produce all responsive documents to Request Nos. 15, 16, 37 that relate to complaints against (i) individuals involved in the decision to fire plaintiff or with discretionary authority to grant or refuse plaintiff's alleged requests for support (ii) individuals accused of discrimination, harassment, or retaliation in this case.
>
> b) Defendant shall identify the names of the "business leaders" consulted before making the employment decisions identified in Interrogatory No. 23 and the substance of their contribution to those employment decisions.
>
> c) Defendant shall respond to Interrogatory No. 27 and Request No. 17 for those employees who have been subject to the hiring and

firing discretion or direct
managerial control of those
individuals the plaintiff is
accusing of discriminatory
treatment.

d) Defendant shall provide further
response to Request No. 7 by
specifically identifying the
documents actually relied upon in
making the employment decisions and
which decision-makers relied on
those documents.

e) Defendant shall provide response
to Request No. 24 for all employees
with the same job title or
substantially similar duties as
plaintiff whose file or other
sources indicate that they engaged
in the same conduct for which
plaintiff was disciplined.  This
includes only conduct that occurred
in the period January 1, 2004, to
the present.

f) Defendant shall provide further
response to Request No. 26 by
producing the most robust
"Salesforce.com" reports relevant
to sales, leads, and commissions of
plaintiff and comparators that are
capable of being created.
Defendant shall also supplement any
commissions production by
distinguishing, where possible,
commissions derived from old
business and new business.

g) Request Nos. 32 and 33:
Defendant shall produce any
requests for "express lot" parking
reimbursements from comparators
that were made between January of
2004 and the present.  Defendant

-27-

shall indicate whether they were
accepted or denied, who made the
request, and any documentation
indicating who made the decision to
accept or reject the request.

h) Request No. 35: Defendant shall
provide existing documents
indicating the rates provided to
prospective customers of
comparators for the period in which
plaintiff was employed at West.

6) Plaintiff may hold an additional 30(b)(6) deposition
over topics that are sufficiently particularized to put defendant
on notice of the questions likely to be asked.  Topics and
questions shall be consistent with the relevance findings and
other limitations noted above.  The deposition shall last no
longer than four hours.

7) Plaintiff's motion for costs and fees is denied.

8) Defendant's motion to strike (Filing No. 64) and
objection (Filing Nos. 77 and 78) are denied as moot.

DATED this 5th day of November, 2012.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court