IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
REX BROWN,                      )
                                )
           Plaintiff,           )      8:11CV284
                                )
     v.                         )
                                )
WEST CORPORATION, a Delaware    )      MEMORANDUM AND
corporation,                    )      PROTECTIVE ORDER
                                )
           Defendant.           )
_____)
```

This matter is before the Court on the motion of Aegis USA ("Aegis"), a non-party, to quash the subpoena issued by plaintiff Rex Brown ("Brown") and for the issuance of a protective order (Filing No. 206). The Court notes that by stipulation of the parties, the motion was transferred to this Court from the Northern District of the United States District Court of Texas (Filing No. 208).

I. Procedural History

On December 27, 2013, defendant West Corporation ("West") filed a notice with this Court regarding its intention to depose Aegis, plaintiff's subsequent employer (Filing No. 162). Plaintiff filed a motion for a protective order in the limited capacity available to an adverse party that wishes to limit a subpoena served on a third-party (Filing No. 166). *See*, *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 8:06CV458,

2009 WL 1562851, at *3 (D. Neb. June 1, 2009) ("[A] party has standing to object to a third-party subpoena on grounds of relevance or to protect a personal right or privilege in the information requested."). Plaintiff's brief explicitly warned that allowing West's requested discovery would necessitate additional discovery by Brown regarding "the propriety of Brown's/Aegis' actions during his employment at Aegis and the reason for his termination." *Plaintiff's Brief in Support of Plaintiff's Motion for Protective Order*, Filing No. 167, at 13.

  The Court granted the motion for a protective order on certain issues which the Court found irrelevant to the defendant's mitigation of damages defense but otherwise denied the motion. *Brown v. West*, 8:11CV284, Filing No. 183. Most significantly, the Court found that "West's mitigation of damages defense is inextricably linked to Brown's performance at Aegis and the reason for his termination." *Id*. at 2. As a result, defendants were left unhindered in their pursuit of deposition testimony and documents from Aegis regarding Brown's wages and compensation at Aegis, circumstances surrounding Brown's termination from Aegis, opportunities provided to Brown to correct performance deficiencies, and communications between Aegis and Brown's counsel. In addition, the Court did not disturb West's request for documents from Aegis which included

-2-

charges of discrimination filed by Brown against Aegis, sworn statements by Brown, a demand letter from Brown to Aegis regarding his Title VII and section 1981 claims, and written communications from counsel for Brown regarding the claims against Aegis.

Despite the explicit request to Aegis for discovery on Brown's charges against Aegis and plaintiff's warnings that he too would pursue discovery on those issues if West was allowed to initiate such discovery, Aegis did not file any motions for a protective order or motions to quash on its own behalf. Seeking to rebut the expected testimony from Aegis that Brown was fired due to poor performance, Brown also served a subpoena on Aegis regarding the reasons for his termination. However, Brown's alternative theory that his termination was the result of discrimination by Aegis expanded the scope of the inquiry to include all the evidence that Brown might use to prove his case in a discrimination suit against Aegis. In fact, Brown has filed a complaint with the Nebraska Equal Opportunity Commission against Aegis charging discrimination in connection to his termination.

II. Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense." Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Court is directed to limit discovery where

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). In addition, the Court must "quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Factors considered in determining whether a subpoena presents an undue burden include:

> (1) the relevance of the requested information; (2) the need of the party for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested information; and (6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *E3 Biofuels, LLC v. Biothane Corp.*, 8:12CV441, 2013 WL 1295211 (D. Neb. Mar. 27, 2013).

III. Discussion

      Aegis requests that the Court quash the subpoena served by Brown covering, albeit more expansively, the same topics requested by West -- most notably, the reason for Brown's termination. Having acquiesced to the subpoena by West, Aegis asks the Court to institute a scheme of asymmetrical discovery by quashing Brown's subpoena covering the same issues. Still, forcing Aegis to submit to depositions by Brown and West on matters central to an imminent lawsuit between Brown and Aegis presents a significant burden. In addition, the degree of increased precision to estimates of front pay is a benefit outweighed by the cost and burden of permitting discovery on whether Aegis' decision to terminate Brown was discriminatory; such incremental gains are out of proportion to the vast expansion of discovery that would be required. The Court must therefore balance the relevance of the information requested by both parties, including Brown's need to counter West's mitigation defense, on the one hand, against the burden to Aegis and the

plaintiff himself,[1] on the other -- keeping in mind that Aegis has already acquiesced to the topics presented in the West subpoena.

West's subpoena sought two distinct sets of information and for two distinct purposes. The Court's denial of plaintiff's protective order was premised on the relevance of these narrow inquiries, and the present motion calls for similar analysis. Because this order will affect not only the scope of plaintiff's deposition but also further limits the scope of defendant's deposition, the Court frames its analysis on the same two relevance issues regarding mitigation of damages.

### A. Duty to Mitigate

First, West sought discovery on Brown's performance at Aegis as generally relevant to West's mitigation defense. This included Aegis' reasons for Brown's termination. The Court stated that "West's mitigation of damages defense is inextricably linked to Brown's performance at Aegis and the reason for his

---

[1] The movant's burden is not typically relevant to the balancing of burdens in a discovery dispute. Here, however, the plaintiff-movant continues to object to the entire line of inquiry which was originally broached by the defendant without objection by Aegis. To the extent that Aegis' motion to quash plaintiff's subpoena forces the Court to revisit its prior ruling against the plaintiff's motion for a protective order, the plaintiff's burden in pursuing this line of discovery is also important to the Court's balancing.

termination" and largely denied plaintiff's request for a limitation on those issues. *Brown v. West*, 8:11CV284, Filing No. 183, at *2. The Court now clarifies and refines its previous order in light of the complications introduced by Aegis' third-party motion.

West's interest in deposing Aegis regarding the reasons for Brown's termination stem from Brown's obligation "to mitigate damages by exercising reasonable diligence to . . . maintain a suitable job once it is located." *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992). Though Brown's performance at Aegis might well be connected to his termination, the fact of Brown's termination is uncontested. Therefore, West's mitigation defense need only focus on the core issue of whether Brown exercised reasonable diligence to maintain his employment -- Aegis' motivation for the termination is not as precisely relevant. To avoid undue burden on Aegis and retain a proportionality between the general burden of discovery and the incremental benefits of such discovery, the Court will, in regard to Brown's duty to mitigate, allow both parties to inquire into Brown's performance at Aegis but not the motivation for the decision to proceed with termination. Relevant to Brown's efforts to maintain employment are Brown's duties, efforts toward satisfaction of those duties, and to what degree Brown took advantage of any opportunities to correct deficiencies identified

by Aegis. Comparators, Aegis' employment policies, appraisals of Aegis' competitive positioning, and the charges by Brown against Aegis are discrimination issues irrelevant to Brown's individual efforts.

The second narrow inquiry addressed in the previous order requires a small foray into Brown's discrimination suit against Aegis. Defendant is concerned that Brown has attributed a period of lost wages to discrimination by Aegis that Brown continues to attribute to West in the present litigation. Certainly, the lost wages cannot be attributed to both employers; or, at least, Brown should not be permitted to recover from both. *See Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir. 1993) (holding that front pay calculations must "attempt to make the plaintiff whole, yet . . . must avoid granting the plaintiff a windfall"). Brown's attribution of responsibility is relevant to the front pay determination this Court must make in the event that Brown receives a favorable verdict. *See Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 642-43 (8th Cir. 1997) (holding that both the awarding of and amount of front pay is an equitable issue for the court). However, evidence as to whether or not Aegis actually discriminated is less relevant. Again, the Court will allow both parties' inquiry into Brown's

attributions of responsibility for front pay but not the merits of the underlying discrimination charge.  Accordingly,

IT IS ORDERED:

1) Aegis' motion to quash plaintiff's subpoena is denied.

2) Neither party to the present litigation shall inquire of Aegis as to the motivation for Brown's termination from Aegis.

3) Depositions of and document requests to Aegis by the parties shall be limited to the issue of Brown's individual performance and efforts to maintain employment, except that the parties may inquire as to any assertions by Brown that Aegis is responsible for certain periods of front pay.

DATED this 17th day of March, 2014.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court