IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| REX BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:11CV284 |
| | ) | |
| V. | ) | |
| | ) | |
| WEST CORPORATION, a Delaware Corporation, | ) | MEMORANDUM & ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the motion of the defendant West Corporation ("West") to exclude the testimony of Donald L. Frankenfeld (Filing No. 200). Plaintiff Rex Brown intends to use Frankenfeld's testimony and expert report to establish damages in the form of lost wages. Defendant West Corporation seeks the exclusion of the testimony and report on the basis that the factual basis and methodology used by Frankenfeld in forming his expert opinion are unreliable.

A. Legal Standard

Federal Rule of Evidence 702 places limitations on the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

>   (c) the testimony is the product of reliable principles and methods; and
>
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. Specifically, the court should consider where applicable the factors set forth in *Daubert*: whether the experts method 1) has been or can be tested, 2) "has been subjected to peer review," 3) "has a known or potential rate of error," and 4) have gained general acceptance in the relevant community. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). However, the factors should be applied in a flexible manner that takes into consideration the circumstances of the case. *Daubert*, 509 U.S. at 594-95.

The Court must also consider other applicable rules, including Federal Rule of Evidence 403 which balances the probative value of certain evidence against its potential to prejudice the trier of fact. *Id*. at 595.

### B. Analysis

The central premise of the disputed testimony is Frankenfeld's opinion that:

> The principal measure of Mr. Brown's loss is his diminished earning capacity. At West, his earnings were substantial and on an upward trajectory, reaching $338,064 (annualized) in 2010. Using his three-year average earnings of $290,282, and deducting estimated mitigation earnings of $85,000 per year, I conclude that his losses, reduced to present value, are $3,964,838.

Defendant takes issue with Frankenfeld's method for calculating both the amount Brown might have been expected to earn at West and the amount Brown is expected to earn in other employment until his retirement.

To calculate the amount Brown would have earned at West if he had continued working there, Frankenfeld used an average of Brown's last three years of earnings at West as a baseline to project annual income going forward.  The annual salary for the third and final year used in that calculation was itself an estimate of a whole year's salary based on Brown's earnings for the partial year for which he was employed.  West asserts that this method failed to take into account other variables that would have affected Brown's compensation.

First, Frankenfeld did not do an analysis of West's compensation structure in relation to Brown's sales history.  While there is no question that Brown's compensation varied based on his sales and how West compensated those sales, Frankenfeld relied on the ultimate result of those factors: the amount West actually

-3-

compensated Brown over the course of his employment.  Notably, for comparison, Frankenfeld also calculated average annual compensation for Brown's previous five years at West, which was not substantially different at $291,227.  Checking for this kind consistency adds a degree of reliability to Frankenfeld's methodology.  Further, Frankenfeld's affidavit points to scholarly references indicating that averaging past annual earnings is a common method for economists who are estimating future earnings for purposes of litigation.

    Next, defendant contends that Frankenfeld did not consider the compensation of comparable positions in the industry or the experience of comparable employees at West in the years after Brown separated from West.  West also complains that Frankenfeld did not consider other economic factors that might have impacted Brown's compensation.  In deposition testimony Frankenfeld explained that though he researched other factors such as West's competitive position, he found no reason to include them in his analysis because his research did not uncover any factors that would indicate any deviation from his three-year-average based projection.  Frankenfeld also filed a supplemental affidavit indicating that after he reviewed comparable compensation data that was later presented to him, his opinion was not affected.  Though some of the factors defendant raises were not used to calculate Brown's expected compensation, the possible effects were considered in the larger framework.

West also argues that Frankenfeld's estimation of the amount Brown will actually earn between his termination at West and retirement is deficient because it fails to take into account potential commissions that Brown might have earned at his subsequent employer Aegis. However, Brown worked for Aegis for less than a year and Frankenfeld's estimation is based on Brown's current employment which does not have the opportunity for additional commission-based compensation.

The Court is satisfied that Frankenfeld's expert testimony meets the minimum standards of sufficient facts and reliable methods set forth in *Daubert*. In addition, West has failed to show any prejudice or confusion that might flow from allowing the expert to testify regarding his opinion before the jury. The Court finds that Frankenfeld's expert opinion could assist the jury in calculating damages, tipping the scales of Rule 403 in favor of admission. Accordingly,

IT IS ORDERED: Defendant's motion to strike the opinions and exclude the testimony of Donald L. Frankenfeld (Filing No. 200) is denied.

DATED this 29th day of April, 2014.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court